IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br><br>DERRICK LEE MOORE,<br><br>　　　　　　　Defendant. | CR 24-59-BLG-SPW<br><br><br><br><br><br>ORDER |

Before the Court is Defendant Derrick Lee Moore's Motion to Suppress. (Doc. 23). Moore seeks to suppress all evidence seized as a result of a probationary arrest and subsequent search on September 25, 2023. (Doc. 22 at 2). The Government opposes the motion. (Doc. 26). The Court held a hearing on August 28, 2025, during which Sergeant Shellie Stichman of Montana Department of Corrections and Officer Shaun Pisk of Montana Probation and Parole testified.

After considering the parties' briefing and the testimony presented at the hearing, the Court denies the motion.

**I.   Background**

In August 2023, Moore was on probation with the State of Montana after he was convicted for Criminal Possession of Dangerous Drugs in state court. (Doc. 22

1

at 3). Moore was subject to several state probationary conditions, including the following:

> 2. The Defendant must obtain prior written approval from his/her supervising officer before taking up residence in any location. The Defendant shall not change his/her place of residence without first obtaining written permission from his/her supervising officer or the officer's designee. The Defendant must make the residence open and available to an officer for a home visit or for a search upon reasonable suspicion. The Defendant will not own dangerous or vicious animals and will not use any device that would hinder an officer from visiting or searching the residence.
>
> 5. Unless otherwise directed, the Defendant must submit written monthly reports to his/her supervising officer on forms provided by the probation and parole bureau. The Defendant must personally contact his/her supervising officer or designee when directed by the officer.
>
> 7. Upon reasonable suspicion that the Defendant has violated the conditions of supervision, a probation and parole officer may search the person, vehicle, residence of the Defendant and the Defendant must submit to such search. A probation and parole officer may authorize a law enforcement agency to conduct a search, provided the probation and parole office determines reasonable suspicion exists that the Defendant has violated the conditions of supervision.
>
> 26. The Defendant shall participate in the 24/7 Sobriety and Drug Monitoring Program, or any program specifically designed to monitor and address the Defendant's use on intoxicants, for a period of time to be determined by the supervising Probation and Parol office, if the Officer deems it necessary and the program is available.

(Doc. 22-1 at 1–2).

Moore violated his probationary conditions multiple times. First, on September 14, 2023, he tested positive for methamphetamine. (Doc. 22-2 at 4). The next day, he failed to report for his treatment intake appointment. (*Id.*). On

2

September 19, Sergeant Stichman visited Moore's reported residence, however, when she arrived, the owner of the property told her that "Moore gave him $100 a week to say he lived there." (*Id.*). Moore had apparently been living at his girlfriend's residence. On September 20, as a result of Moore's violations, Sergeant Stichman placed Moore on a GPS monitor and added a GPS condition to his probationary terms. (*Id.* at 3). Further, due to Moore's tumultuous relationship with his girlfriend, the GPS monitor contained an exclusion zone, which extended 1500 feet from the center of his girlfriend's house, at 3295 Granger Avenue East, #13, in all directions. If Moore entered the exclusion zone, Sergeant Stichman would receive a text message and email notifying her that Moore had entered the zone. Likewise, Moore would receive a notification on his GPS bracelet. "[Moore] state[d] that he underst[ood] where he [could not] go." (*Id.*).

On September 21, Moore was arraigned on a new felony charge out of Yellowstone County. (*Id.*). Following his arraignment, Moore was instructed to report to his probation officer on three separate occasions and failed to report each time. (*Id.* at 2–3).

On September 25, Sergeant Stichman received an alert from Moore's GPS device indicating that Moore had entered the exclusion zone. (*Id.* at 2). Sergeant Stichman requested assistance from Officer Pisk and two other parole officers to locate Moore. Billings Police Department was also dispatched to Moore's location.

3

While the two parole officers monitored Moore's GPS location, Sergeant Stichman and Officer Pisk entered the Kings Avenue Wal-Mart where they found Moore at the electronics counter. (Doc. 22-3 at 5). Sergeant Stichman and Officer Pisk detained and escorted Moore outside. (*Id.*). Once outside, Officer Pisk searched Moore's person and found a glass loker pipe containing white residue and two baggies of marijuana. (*Id.*). Officer Pisk searched Moore's backpack and discovered six plastic bags containing a white crystalline substance and multiple items of drug paraphernalia. (*Id.*).

Based on the discovery of the illicit materials, Moore was charged with Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 841(a)(1). (Doc. 3).

## II. Legal Standard

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton,* 526 U.S. 295, 300 (1999). Probationers have a diminished privacy interest under the Fourth Amendment and

4

an officer only requires reasonable suspicion to conduct a probationary search. *United States v. Knights*, 534 U.S. 112, 120 (2001).

If law enforcement violates a defendant's Fourth Amendment right to be free from unreasonable searches and seizures, then, under the exclusionary rule, "all evidence seized as a result of the unconstitutional actions of law enforcement must be suppressed as the fruit of the poisonous tree." *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963)).

### III. Analysis

Moore argues that the officers unlawfully arrested and searched him without reasonable suspicion that he violated his probationary conditions—namely, the violation of his GPS condition.[1] (Doc. 22 at 6). He asserts that the "bald statement" that Sergeant Stichman was alerted is not a significant evidentiary basis to support reasonable suspicion. (*Id.* at 7). Therefore, he concludes that the arrest was illegal and subsequently, any evidence obtained as a result of the arrest and search must be suppressed. (*Id.* at 10).

---

[1] Moore also argues that the precise boundaries of his exclusion zone was a question of fact. (Doc. 22 at 8). Sergeant Stichman testified that the exclusion zone extended 1500 feet from Moore's girlfriend's house at 3295 Granger Avenue E, # 13. She further testified that she reviewed the zone with Moore. Her chronological notes reflect that Moore understood "where he cannot go." (Doc. 22-2 at 3). Moore's argument is therefore moot.

The Government counters that the officers possessed ample reasonable suspicion that Moore violated the conditions of his supervision, and thus, the arrest and subsequent search was legal. (Doc. 26 at 6). The Court agrees with the Government.

### A.  *Probationary Arrest*

The Court "look[s] to state law to determine the lawfulness of an arrest by a state officer for a state offense." *United States v. Shephard*, 21 F.3d 933, 936 (9th Cir. 1994). Moore was arrested by state probation officers and thus his arrest is a matter of state law.

In Montana, a probation and parole officer may arrest the probationer without a warrant or authorize another officer to do so by giving oral authorization. Within 12 hours, the officer must provide a written statement at the place of detention, stating that, in the officer's judgment, the probationer violated the conditions of their release. Mont. Code Ann. § 46-23-1012(2). Generally, a probation officer may arrest a probationer upon reasonable cause to believe that they have violated their conditions of supervision. *State v. Ploufee*, 646 P.2d 533, 537 (Mont. 1982) (citations omitted). The reasonable cause standard is "substantially less than the probable cause standard required by the Fourth Amendment because of the probationer's diminished expectation of privacy." *State v. Burchett*, 921 P.2d 854, 856 (Mont. 1996). The reasonable cause test is a fact driven test and an arrest should

6

only be permitted when there is a factual foundation justifying the arrest. *State v. Beaudry*, 937 P.2d 459, 462 (Mont. 1997).

Here, the Court need not resolve whether a ping from Moore's GPS device provided reasonable grounds for an arrest. Sergeant Stichman already established reasonable cause to believe Moore had violated his probation conditions prior to the GPS condition violation. Moore tested positive for methamphetamine on September 14 and failed to show up for treatment. He lied about his residence on September 19, and further, he failed to report to Sergeant Stichman on three separate occasions. These violations provided sufficient grounds for a probationary arrest. *See United States v. Crawford*, CR 19-01-BU-DLC, 2019 WL 2570250, at *7 (D. Mont. June 21, 2019), *aff'd*, 828 F. App'x 450 (9th Cir. 2020). Therefore, the probationary arrest was lawful.

### B. *Probationary Search*

"The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy, and on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Knights*, 534 U.S. at 118–19 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated

7

exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One exception is when law enforcement's "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987).

Supervising probationers is a law enforcement function involving "special needs." Probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty . . . dependent on observance of special [supervision] restrictions.'" *Id.* (quoting *Morrisey v. Brewer*, 408 U.S. 471, 480 (1972)). Restrictions on probationers are meant to assure that supervision is a period of rehabilitation, and that the community remains unharmed by the probationer being at large. *Id.* Therefore, supervision "is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id.*

To this end, a probationary search is lawful if conducted under a state law that meets the Fourth Amendment's reasonableness standard. *United States v. Conway*, 122 F.3d 841, 842 (9th Cir. 1997). Montana courts recognize that requiring a warrant for probation searches would "substantially inhibit the effectiveness" of supervision. *State v. Burke*, 766 P.2d 254, 256 (Mont. 1988). The special needs of the parole and probation system "strongly militate toward the 'reasonable grounds' standard." *Id.* Montana has codified this standard in the Administrative Rules of Montana which

permit a search of probationers upon reasonable suspicion that an offender has violated the conditions of their supervision. Admin. R. M. 20.7.1101(6) (2024). "Accordingly, [in Montana,] a probation officer may search a supervisee's person, vehicle, and residence and the supervisee must submit to such search upon the probation officer's reasonable suspicion that the offender has violated the conditions of his supervision." *Crawford*, 2019 WL 2570250 at *5 (citing *State v. Conley*, 415 P.3d 473, 476 (Mont. 2018)).

Here, the Court has already determined that the officers had reasonable suspicion that Moore violated his probationary conditions to justify an arrest. That same reasonable suspicion likewise authorized the probationary search of his person. Upon search of his person, Officer Pisk discovered a glass loker containing white residue as well as marijuana. At this point, Officer Pisk had further reason to believe Moore was in violation of the condition that he abstain from using or possessing illegal drugs. Accordingly, Officer Pisk was permitted to search Moore's backpack.

## IV. Conclusion

In sum, the Court finds law enforcement did not violate Moore's Fourth Amendment rights when they conducted a probationary arrest and search of his person and backpack.

IT IS HEREBY ORDERED that Defendant Derrick Lee Moore's Motion to Suppress (Doc. 23) is DENIED.

DATED this 2nd day of September, 2025.

_____
SUSAN P. WATTERS
United States District Judge